## ELIZABETH ROBINSON *vs.* THE SINGERLY PULP AND PAPER COMPANY.

*Petition to Modify Decree Alleged to Have Been Entered by Mistake—Secondary Evidence of Lost Document.*

A woman who was entitled under a will to an annuity of $6,000 held as security for its payment a mortgage on certain property. Another mortgage on the property was executed by the owner to secure certain bonds. Upon defaults in payment under both mortgages there arose a controversy as to whether the mortgage of the annuitant was a first lien or not. By con-

sent of counsel the property was sold under a decree. After the sale an order of Court was passed directing the proceeds to be applied first to the payment of the arrears of the annuity, and that the balance, amounting to about $43,000, be invested and the income thereof paid to the annuitant during her life, and that upon her death the principal should be brought into Court. Seven years after this order the annuitant filed the petition in this case, alleging that the order as to the investment of the proceeds of sale was passed by mistake and that she was entitled to have the same modified so as to direct the payment of the full amount of the annuity as it accrues from the principal. *Held,* upon an examination of the evidence, that the order was not passed by mistake, but was entered in pursuance of an agreement of compromise between the annuitant and the other mortgagee, who had denied the validity of the mortgage securing the annuity; that this agreement provided that the proceeds of the sale to the extent of $100,000 should be invested and the income paid to the annuitant, and that after her death the principal should be paid to the other mortgagee; that this agreement was signed by the parties and filed in the cause, and that although it has since been lost, yet its contents have been satisfactorily established by secondary evidence, and that consequently the petitioner is not entitled to the relief asked for.

The question whether diligent search has been made for a lost document so as to render secondary evidence of its contents admissible is one that is addressed to the sound discretion of the trial Court, whose determination thereof is not reviewable on appeal unless there has been a plain abuse of the discretion.

When there is no evidence of the existence of a copy of a lost document, its contents may be proved by the testimony of witnesses who had read the paper. It is not necessary that their evidence should show the exact language of the document, but it is sufficient if it proves the substance thereof, so far as it relates to the matter in controversy.

*Decided March 24th, 1909.*

Appeal from the Circuit Court for Cecil County (PEARCE, C. J., ADKINS and HOPPER, JJ.).

The cause was argued before BOYD, C. J., BRISCOE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*L. M. Haines* and *William S. Evans,* for the appellant.

*John Prentiss Poe* (with whom was *Wm. T. Warburton* on the brief), for the appellee.

HENRY, J., delivered the opinion of the Court.

This appeal from the Circuit Court for Cecil County, in Equity, depends for its determination upon a single question of fact, coupled with some points of evidence; but in order to understand the proposition a somewhat lengthy statement of the case will be necessary.

The appellant, who is the daughter of the late Joseph Singerly, of Philadelphia, who died in the year 1878, is the beneficiary under the third item of her father's will to the extent of a life annuity of $6,000, to be paid in monthly instalments of $500. A like bequest was made by the testator to two other children, and the residuary estate was given and bequeathed to the Pennsylvania Company for Insurance on Lives and Granting Annuities in trust to pay the annuities to his children, and William M. Singerly, to whom was bequeathed a large part of the estate, was made responsible for the payment of such portion of these annuities as the income from the residuary estate might be deficient in providing for. The legacy, with the conditions attached, was accepted by William M. Singerly, who paid the several instalments of annuities until his death, in February, 1898.

In 1881, William M. Singerly, in obedience to an order of the Orphans' Court of the County and City of Philadelphia, passed in the matter of the estate of Joseph Singerly, deceased, entered bond to the Commonwealth of Pennsylvania in

the penalty of one hundred thousand dollars with the Fidelity Insurance Trust and Safe Deposit Company as surety thereon, conditioned for the payment of said annuity. In 1884, Wm. M. Singerly, in order to indemnify the aforesaid Fidelity Insurance Trust and Safe Deposit Company from loss by reason of its suretyship, gave his individual bond to said company in the penalty of $200,000, and secured said bond by a mortgage for $100,000 to said company upon certain property in Cecil County, known as the Providence Paper Mills.

Subsequently, Wm. M. Singerly conveyed the said Providence Paper Mills and another property, known as The Singerly Pulp and Paper Mill, to the Singerly Pulp and Paper Company, a corporation, and the last-named grantee mortgaged both properties to the Chestnut Street Trust and Savings Fund Company, trustee, to secure an issue of $500,000 of bonds.

On July 13th, 1898, the appellant executed a release to the Fidelity Insurance, Trust and Safe Deposit Company from all liability upon its obligation of suretyship upon the bond of Wm. M. Singerly, then deceased, and received an assignment to her of the mortgage given by way of indemnity by the said Singerly to the said company, as hereinbefore mentioned.

In September, 1898, the appellant and her husband, who was then living, filed a bill for the foreclosure of the above mortgage, and in December of the same year Richard Y. Cook and George H. Earle, Jr., assignees of the Chestnut Street Trust and Saving Fund Company, and George H. Earle, Jr., receiver of The Chestnut Street National Bank, on behalf of themselves and other holders of the bonds of The Singerly Pulp and Paper Company, filed a bill in the Cecil County Court for a foreclosure of the $500,000 mortgage given to secure the bonds aforesaid, and in March, 1899, the Singerly Pulp and Paper Company filed a bill in the Cecil County Court asking for the appointment of a new trustee under the $500,000 mortgage, in the place of the insolvent Chestnut Street Trust and Saving Fund Company.

These three cases were afterwards consolidated under an agreement filed March 29th, 1899, signed by the solicitors for all the parties, as follows:

"It is hereby agreed in the several above-entitled causes:

(1) That the said causes shall be consolidated.

(2) That a decree be entered adjudging and declaring the mortgage from Wm. M. Singerly to The Fidelity Insurance, Trust and Safe Deposit Company assigned to Mrs. Elizabeth Robinson in these proceedings mentioned to be a valid first lien upon the property described in said mortgage.

(3) That a decree shall be entered in the consolidated cause for the sale of the property covered by the mortgage mentioned in said causes by trustees to be appointed by the Court.

(4) This agreement is subject to the approval of John G. Johnson, Esq., of Philadelphia."

On April 1st, 1899, the Circuit Court for Cecil County in these consolidated cases passed a decree, the second paragraph of which is as follows:

"That the mortgage from Wm. M. Singerly to the Fidelity Insurance, Trust and Safe Deposit Company, dated 26th day of July, 1884, and assigned by said last-mentioned company to Elizabeth Robinson, according to the true intent and meaning thereof, is a mortgage to secure to said Elizabeth Robinson the payment of the annuity of $6,000 mentioned in these proceedings, and is a valid first lien upon the property described in said mortgage, being the property known as the Providence Paper Mill, and that there is due and unpaid to the said Elizabeth Robinson the several monthly payments of $500 each, falling due on the first day of each month since February 1st, 1898, amounting to $6,500, together with interest thereon from said several dates, and by reason of said quarterly payments being due and unpaid, that said mortgage is now in default."

Subsequently, on January 22, 1900, this decree, on petition filed by Elizabeth Robinson, was corrected so as to make the amount due on the said annuity $7,000, instead of $6,500.

By the said decree, William T. Warburton, Albert Constable and John S. Wirt, were appointed trustees to sell the property in the proceedings mentioned, and in pursuance of such authority did make sale thereof for the sum of $70,000, and brought the proceeds into Court. The auditor stated an account, which, after allowing $7,344.12 to Mrs. Robinson for arrearages in her annuity, and which, after deducting expenses of sale and other charges allowed by the Court, showed a balance of $43,984.67, which amount the audit distributed as follows: "To Wm. T. Warburton, Albert Constable and John S. Wirt, trustees, to be invested under the direction of this Court and the interest thereof to be paid to the said Elizabeth Robinson during her life, and after her death to be distributed under the future order of this Court."

This audit was filed March 22, 1900, and on May 8th, 1900, the said Court passed the following order ratifying the same:

"Ordered this 8th day of May, 1900, that the within and aforegoing report of the auditor be and the same is hereby ratified and confirmed and the trustees are hereby ordered to distribute the funds in accordance therewith, with a due proportion of interest as the same has been or may be received. And the trustees are hereby ordered and directed to invest the sum of $43,984.67 (the same being the amount named in this audit, upon which Elizabeth Robinson is to receive the interest thereon during her life) in good first mortgages on real estate in Cecil County, Maryland, under the direction of this Court, the interest arising from said investments to be paid to Elizabeth Robinson during her life, and upon the death of the said Elizabeth Robinson the principal sum to be brought into this Court to be disposed of under its future order."

The three trustees above named and, after the death of Messrs. Constable and Wirt, Mr. W. T. Warburton, who was appointed sole trustee by the Court, regularly paid over the interest collected on the money invested by them to Mrs. Robinson.

But on September 12th, 1907, the complainant, Mrs. Robinson, filed in the Circuit Court for Cecil County a petition in the consolidated cases hereinbefore referred to, which is the beginning and the foundation of the questions involved in this appeal. The said petition recites at length the statements above set forth and makes the whole record in the said consolidated cases a part of her petition. The petition further alleges that she has but recently discovered that the order of May 8th, 1900, ratifying the audit aforesaid, was passed by mistake and is erroneous; that by said audit the said sum of $43,984.67 was distributed to the said trustees "to be invested under the direction of this Court and the interest thereof to be paid to Elizabeth Robinson during her natural life and after her death to be distributed under the future order of this Court," when in fact the said sum should have been directed to be invested for the benefit of the petitioner and the principal and interest accruing thereon should have been ordered to be held by said trustees and from time to time applied to the payment of said instalments of annuity as they fell due."

The bill alleges that said order of ratification was passed by the Court "inadvertently and by mistake and without having its attention directed thereto," and prays that an order may be passed "so drawn as to correct said error and mistake in the aforesaid auditor's report and order of confirmation of said audit, and to modify the same so that your petitioner may receive her several arrearages and annuities."

Notice was given by order of publication to all persons claiming an interest in said sum of $43,984.67 to show cause, if any they had, before November 14th, 1907, why the prayer of said petitioner should not be granted.

On November 11, 1907, Richard Y. Cook and George H. Earle, Jr., assignees of The Chestnut Street Trust and Saving Company and George H. Earle, Jr., receiver of The Chestnut Street National Bank, parties to the above consolidated causes, filed their answer to said petition, in which they alleged substantially as follows: That in the proceedings

which led to the decree in these consolidated causes, said respondents denied absolutely the validity of the petitioner's mortgage upon said Providence Mill, and claimed their mortgage thereon to be a valid first lien thereon, and therefore to be a first lien upon said fund of $43,984.67, and that an issue of fact was thus raised as to the rights of said parties and that in settlement of all disputes as to said rights an agreement of compromise was entered into by all the parties to said consolidated causes, and was executed by all of them: That this agreement was presented to the auditor and Court, but has since been lost or mislaid; that by said agreement it was provided "that the lien of said mortgage in which the petitioner was interested upon the Providence Mills should be recognized as valid; that if the net proceeds of foreclosure of said mortgage should amount to as much as $100,000 she, the petitioner, should receive the interest thereon during her life, but that if said net proceeds should be less than $100,-000 she should receive the interest of said fund, and the same should be paid to her for life and that after her death it should be distributed to the bondholders, including said respondents, under their mortgage on said Providence Mills; and that by virtue of the terms of said agreement thus executed, the whole interest of Mrs. Robinson therein became and was limited to her right to receive interest thereon during her life;" and that by virtue of said agreement followed by the decretal order ratifying said auditor's account and report, based on said agreement, the petitioner is debarred from claiming any other right or interest in said fund.

The said answer further alleges that even if there had been no such agreement, said decretal order finally determined the rights of all the parties, which cannot now be revised, altered, modified or annulled.

On November 27th, 1907, the petitioner filed a general replication to the said answer, and no other cause having been shown by any other parties why the prayer of the petition should not be granted the Court on November 29th, 1907, passed an order referring the proceedings to the auditor to

take such testimony as should be produced to him, on giving the usual notice, and to state such accounts as the parties should request on or before February 15th, 1908. This time was extended upon petition, and on July 8th, 1908, the auditor returned the testimony taken and on July 15th, filed a second account and report, made at the special instance and request of the petitioner, in which he has awarded the whole $43,984.67 to the arrearages of the petitioner's annuity as per statement filed with said report.

Messrs. Earle and Cook have excepted to the ratification of this account and report upon the grounds already sufficiently stated in their answer to said petition.

On July 28th, 1908, the Circuit Court for Cecil County ordered and decreed that the said audit be rejected and that the petition of Elizabeth Robinson, filed September 12th, 1907, be dismissed with costs, at the same time filing a clear and able opinion, setting forth its reasons for such decree. From this decree, an appeal was entered by the petitioner on September 21st, 1908.

Inasmuch as the question of fact involved goes to the merits of the case and is decisive of it, we think it unnecessary to discuss the question of pleading as to whether the procedure should have been by bill of review, or original bill, rather than by petition, the method pursued.

We have read the record with care. We have considered the strong and able presentation set forth in the brief of the appellant. We have felt that the petitioner, who improvidently surrendered her first security for the payment of the annuity due her under her father's will, was entitled to the utmost consideration, but we have been unable to reach any conclusion on the question of fact involved different from that of the learned Court below, and we might well rest our conclusion upon the clear and comprehensive opinion of that tribunal, did we not consider it our duty to discuss some of the points raised in the argument for the appellant. In doing this we shall find it necessary to go over with some detail the

testimony in the record as well as to consider the inherent probabilities of the case.

Although on the face of the petition, and some of the papers on file in the case at the time of its date, it appears that the complainant has been wronged, yet the real merits of the controversy depend upon the agreement of compromise alleged to have been executed by all the parties to the suits, and which is stated in substance in the answer of the respondents hereinbefore quoted. We are therefore called upon to determine as to whether such an agreement was actually executed and filed in the case by the parties, and, also, if it was made and filed as to whether its loss and contents have been proved by legal and competent evidence.

In the first place it must be conceded that the record testimony does not disclose that the alleged agreement was ever filed in the case, there being no docket entry of such filing, nor was it copied by the clerk of the Court in the record of the proceedings, nor could it be found among the papers in the case, at the time of or since the institution of the present suit; although diligent search was made for the same. On the other hand, the preponderance of oral evidence points the other way. The most important witness on this subject, whose recollection seemed to be clear, was Wm. T. Warburton, Esq., one of the three original trustees for the sale of the property and afterwards sole trustee for the care and investment of the fund in controversy, and who was also the attorney for Mrs. Robinson, the petitioner, in the original proceedings. He testified in a positive and definite manner, unshaken by cross-examination, that such an agreement was executed by all the parties in the case, including Mrs. Robinson and her husband, both of whom signed it in his office and who fully understood its contents. He further testified that this paper was executed prior to the agreement of counsel at the time of the submission of the case for decree, but that both papers were filed at the same time. "The agreement provided that the property should be sold under a decree of the Court: That Mrs. Robinson's mortgage should be declared

a valid first lien, and that the net proceeds of the sale of the
Providence Mill property, upon which her mortgage was a
lien, to the amount of $100,000.00 should be invested under
the order of the Court—the interest to be paid to her during
her life, at her death, the corpus of the fund was to be paid
into Court and distributed to the bondholders.  The agree-
ment also provided and the portion of which I now speak was
suggested by Mr. Wirt, that if the net proceeds of the prop-
erty were less than $100,000.00 that whatever they might be,
it was to be invested under the order of the Court, the interest
to be paid to Mrs. Robinson during her life and the corpus
of the fund at her death to be brought into Court to be dis-
tributed to the bondholders.  Mr. Constable and I agreed to
that proposition and no one at that time had any idea that the
net proceeds of the sale of the Providence Mill would be less ·
than $100,000.00.  When the Court passed the decree in the
case it fixed as a minimum price for the Providence Mill the
sum of $200,000.  That agreement, as I have stated, was
signed by the respective parties to the litigation and there
was a written submission for a decree signed by the solicitors
of the respective parties and was filed in the Court."  He
also stated that the agreement provided for the payment of
arrearages of the annuity up to a certain date.  He further
testified that the last time he saw this agreement it was among
the papers filed in the cause at the time JUDGE BROWN ap-
pointed him sole trustee; that JUDGE BROWN then went over
all the papers in the case with him and examined them in the
clerk's office for an hour or more.  This was January 12th,
1905.  He further testified that he had searched through all
the papers in the case in the clerk's office, as well as every
paper in his own office, and could not find the agreement.

Richard Y. Cook, one of the respondents, stated that he
signed an agreement in the office of the Guarantee Trust and
Safe Deposit Company, and that to the best of his recollection
the signatures of Dr. and Mrs. Robinson were at that time
attached to the paper.  He also corroborated Mr. Warburton
as to the substantial features of the agreement, and contra-

dicted him in no particular, though his recollection was not so full as to all the details of the paper.

George H. Earle, Jr., another of the respondents, testified that he signed the agreement, and that his signature completed the contract, while his testimony as to the contents was that the income from the fund was to go to Mrs. Robinson for life, and upon her death it was to be paid to the receivers and assignees. He said: "The corpus was to be kept intact and turned over to us. That made a deep impression upon my mind."

Mrs. Robinson, in rebuttal, testified that she did not sign the agreement and never heard or saw of such a paper, and stated that her reason for postponing so long to call for the payment of the arrearages of her annuity out of the fund was because she was waiting for the sale of the Broad Street house in Philadelphia out of which she expected to be paid. She stated further that Mr. Warburton never explained to her the contents of the paper, and that she had never relinquished her claim to the corpus of the fund, though she admitted that she understood that she was to receive the income from the fund which was estimated at $2,000 to $2,200 a year.

Omitting a recital of any further evidence, as being superfluous, if admissible, we have here a preponderance of three witnesses to one in favor of the existence of an agreement, though the fact of its having been filed in the case stands upon the evidence of Mr. Warburton alone. If we should hold, in the absence of any docket entry showing the filing of such a paper, that such testimony was unsatisfactory, yet our doubts would be dispelled when we came to consider and to weigh the probabilities of the case.

In the first place, looking at the situation of the parties at the time the alleged agreement was made, we find that the validity of Mrs. Robinson's mortgage was being seriously assailed, and that after many months of litigation the proceedings were stopped by the consent of all the parties to the passage of a decree. If the agreement of counsel embodied the entire understanding of the parties, then there was in

reality no compromise whatever as Mrs. Robinson obtained practically all that she was contending for and the protracted litigation resulted in no benefit to the respondents.

Moreover, we find strong corroboration of the existence of the lost agreement in the decrees passed in the cause, although the petitioner argues earnestly that the decree of April 1st, 1899, is inconsistent with it. There has not yet been filed in the case a decree embracing the whole subject and finally disposing of it. The decree of April 1st, 1899, was primarily for the sale of the property, and the decree of May 8th, 1900, ratifying the auditor's report, was for the temporary distribution of the proceeds of sale, but it will be necessary upon the death of Mrs. Robinson for the Court to pass still another order or decree disposing of the corpus of the fund.

These successive decrees are not inconsistent with each other. So far as they touch upon the same points they are harmonious, but the decretal order of May 8th, 1900, passed while the facts were fresh in the minds of all the parties and when the petitioner was represented by counsel, adds an additional term to the decree of April 1st, 1899, indicating in our opinion that there must have been such an agreement as alledged in the case, other than the agreement of the solicitors, which the parties, the counsel, the auditor and the Court, unless we should hold that all of them were negligent in their duties, had before them in determining the sale of the property and the disposition of the proceeds, and which will control the Court in its final decree in distributing the corpus of the fund. Standing as at present there is a lack of consistency in the proceedings. But with the agreement, as established by Mr. Warburton and others, added to the papers in the case, the proceedings and successive decrees become clear and harmonious.

Nor does it seem plausible to us that Mrs. Robinson for so long a period as seven years would have acquiesced in the payment to her of the income from the fund if she were entitled to take from the corpus to meet any deficiency in her annuity of $6,000. From such long acquiesence we are con-

strained to make an inference adverse to her present claims, which is not mentioned in any of the letters passing between her and her trustee about the collection and payment of interest due her.

We think the foregoing sufficient reason, without adverting further to the extreme negligence that could be imputed to her counsel, the auditor and the Court, for us to conclude that the alleged agreement was executed by the parties and filed in the case, and that it was of controlling importance in guiding the action of the Court.

But it is urged that conceding the existence of such an agreement, its loss and its contents have not been properly proved by the respondents. One objection made is that the testimony does not show that sufficient search was made for it in order to admit of secondary evidence of its contents. Without rehearsing the testimony on this point, and conceding that when a missing paper is very important and its absence is attended with suspicion that the search should be more diligent than under ordinary circumstances, yet it is the rule that the question of diligence in search, so as to open the door to secondary proof, is one that lies in the sound discretion of the trial Court and is not reviewable here, unless the discretion had been abused. *Wigmore on Evidence,* Vol. 2, sec. 1194; *Taylor on Evidence,* 358.

Again it is contended that there are degrees in secondary, as in primary evidence, and that the best secondary evidence obtainable, for instance a copy, should have been offered in the first place or the impossibility of producing it established to the satisfaction of the Court.

An examination of authorities shows that there is no settled distinction between what is known as the English rule, holding that there are no degrees in secondary evidence, and the American rule, holding that are such degrees. The Courts of this country seem to be divided upon the point, but the better rule, we think, is thus stated in *Doe v. Biggers,* 6 Ga. 188: "Where there is no ground for legal presumption that better secondary evidence exists, any proof is received which

is not inadmissible by the rules of law, unless the objecting
party can show that better evidence was previously known to
the other and might have been produced." *Greenleaf on
Evidence,* Vol. 1, sec. 84, note,

As to the objection that the evidence does not give all the
contents of the missing document, nor its language, we do
not think it lacking in that completeness which is necessary
for the purposes of a settlement of the matter, in controversy.
The testimony of Mr. Warburton really purports to give all
the contents of the lost document, but it is certainly full and
definite upon the matter in litigation. It is only necessary to
prove the substance of the material facts, and while mere con-
versations, discussions or indefinite and vague statements
would not be sufficient to establish the contents, yet verbal
precision cannot be insisted upon as such a rule would prac-
tically exclude parol proof. *Wigmore on Evidence,* Vol. 3,
sec. 2105.

In *Thompson v. Thompson,* 9 Ind. 333, the Court says:
"Proof of its (referring to a deed) contents is necessarily
addressed to the jury, but under the direction of the Court
that on the one hand vague and uncertain recollections will
not do, and on the other that a degree of precision which the
memory never retains is not required."

It is also in evidence that the document was signed by all
the parties. It was not such a paper as required either at-
testation or acknowledgment in order to give it validity, and
the statement that it was duly signed is sufficient to indicate
its proper execution.

Holding that the testimony adduced was legally admissi-
ble, so far as we have discussed it in support of our conclu-
sion, we do not deem it necessary to discuss the numerous
exceptions to the evidence filed by the petitioner.

Finding that there is sufficient evidence to establish the
existence, the loss and the contents of the agreement of the
parties, it follows that the decree of the lower Court, in dis-
missing the petition, must be affirmed.

*Decree affirmed with costs above and below.*