## RAYMOND ANDERSON *v.* STATE OF MARYLAND

[No. 360, September Term, 1969.]

*Decided June 23, 1970.*

<span></span>

The cause was submitted to MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*James W. McAllister* (*John D. Hackett* on the brief) for appellant.

*John J. Garrity, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *George A. Eichhorn, III, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Raymond Anderson, the appellant, was convicted in the Criminal Court of Baltimore on two counts of receiving stolen goods, and one count of maintaining a common nuisance, i.e., a dwelling house, for the sale of illegal narcotic drugs. Judge George D. Solter, sitting without a jury, imposed sentences of eighteen months on each of the receiving convictions to run concurrently with each other but consecutive to a ten year term being served for another offense; he also imposed a sentence of two years on the disorderly house conviction to run concurrently with the ten year term. Anderson complains the search warrants were invalid, a copy of the warrants were improperly admitted into evidence, the evidence was insufficient to support each of the convictions and a double jeopardy violation occurred in the common nuisance conviction.

At about 8:00 P.M. on April 2, 1968, while two police officers were conducting a surveillance of the activities of Anderson, they observed one Stephen Xikouloutakis go into the house at 414 N. Madiera Street which was occupied, according to the officers, by the appellant, Raymond Anderson, and his common law wife and codefendant, Geraldine Hopkins. Anderson testified denying he lived with Hopkins but admitted that he was the father of four of her five children who had been born within the preceding three or four years and that he visited the property every day for the purpose of seeing his children and Geraldine. Stephen Xikouloutakis stayed at the home only a few minutes before leaving in his car. The officers followed him until the automobile stopped for a red light. When the officers left their automobile and ap-

proached Mr. Xikouloutakis' automobile, Mr. Xikoulou-takis opened the door and threw out a vial which burst disclosing six or seven white gelatin capsules containing a white powder later identified to be heroin.

Continuing their surveillance the next day, April 3, 1968, at about 4:10 P.M. the officers observed the appellant and codefendant Geraldine Hopkins moving furniture from 414 N. Madiera to 404 N. Madiera Street. The following day, April 4, at 8:00 P.M., they observed an unidentified white male enter 404 N. Madiera Street and stay a few minutes and come out. On Saturday, April 20, 1968, at about 6:55 P.M., the officers observed Lee Wilkins, an Indian male known to the officers to be a narcotic addict, in an automobile containing two other known addicts, Adam Wames and Joseph Palugi. The officers observed Mr. Wilkins walk up to the front of 404 N. Madiera Street where Anderson gave something to Mr. Wilkins. The officers followed the Wilkins car and stopped it in a few blocks. When Mr. Wilkins saw the officers approaching, he threw white capsules into his mouth. The officers were unsuccessful in preventing Wilkins from swallowing the capsules. In searching the car the officers found an improvised syringe and a bottle cap containing a residue later identified as heroin. The other two occupants of the car had fresh needle marks on their arms.

On April 27, 1968, at about 1:25 P.M. Robert Guido, also known to the police officers as a drug addict, stopped his automobile in front of 404 N. Madiera Street, entered the house and came out in a few minutes. When the officers stopped their vehicle, they observed him throw into his mouth white capsules which were not recovered. A search of Mr. Guido revealed an improvised needle and syringe.

Based on these observations, the officers typed an original and three carbons of an application for a search warrant which was issued by Judge Aarson Baer in the Municipal Court of Baltimore in the presence of the officers. The officers kept the original copy of the warrant until after it was executed when they returned it on May 3,

1968 at 3:00 P.M. to the issuing court. Lieutenant Michael A. Ford testified that at the time of the preliminary hearing on November 12, 1968, it was discovered that the warrant was missing. He and the two officers conducting the surveillance searched the records of the Chief Clerk of the Municipal Magistrate's Court where such warrants are kept but they were unable to locate the original. One of the surveillance officers testified that in addition to searching in the magistrate's office, they searched their own files and the issuing Judge's bench and desk with his permission. A carbon copy of the warrant was admitted into evidence over objection.

When the officers executed the warrant at about 1:00 P.M. on May 1, Hopkins was seated on the steps of 402 N. Madiera Street while Anderson and one Raymond Eugene Byrd were standing in the doorway of 404. As the men saw the officers approach, they ran into the house, slammed the door and ran up to the second floor. In a lining in Mr. Byrd's hat, the officers found three white tablets which were thought to be barbiturates by the officers. The officers also removed two bottles of clear liquid and a spoon, none of which showed traces of narcotics. The only prohibited drugs found were the three tablets which were shown to be methodone, a synthetic prohibited narcotic drug. During the search, the officers observed a considerable amount of new furniture, noted the serial number of a Motorola stereo and noted the erasure of the serial number on a television. They also observed a quantity of new clothing, some of which had tags that read Dora's Thrift Shop, 517 N. Chester Street.

At police headquarters, the officers found that the Motorola stereo had been stolen from the Elgin Sales Company on April 6, 1968, and that many items of clothing had also been stolen from Dora's Thrift Shop on that date. The officers returned to the Municipal Court and obtained a second search warrant to search for the stolen property. They immediately executed the warrant and seized the stereo mentioned above and the clothes bearing tags from Dora's Thrift Shop. After a bench conference

at the specific request of the court and *defense counsel,* the State's Attorney made the following proffer:

> "MR. EICHHORN: State would proffer that the evidence as to this particular warrant, which has just been referred to, that is, search and seizure as to certain goods found in 404 N. Madiera Street, would be the same offered by the State; that is, the testimony of Officer Cohen as to typing the warrant up would be the same, the search that was made by Lt. Ford and Officer Santivasci for this same warrant and affidavit would be exactly the same as was just heard in court."

After a long colloquy between court and defense counsel, counsel finally stated:

> "I will make my same objection, of course, Your Honor, for the same reason I objected to the first warrant.
>
> "THE COURT: I will overrule that and reserve any other grounds that you made on the original warrant based on the grounds this isn't the original.
>
> "MR. McALLISTER: All right, Your Honor."

In his brief, appellate counsel makes the bald statement there was no testimony as to the loss of the second warrant. Although the record is somewhat confused, it is apparent that all persons present understood that a stipulation was made that the loss of the original of the second warrant was under the exact same circumstances as the loss of the first.[1]

Mr. Xikouloutakis testified that on April 2, 1968, at about 8:00 P.M. he purchased ten capsules of heroin from Raymond Anderson for $20. at a house in the 400 block N. Madiera Street and when questioned as to the address of the house stated: "I believe it was 404." Other wit-

---

1. It would seem the candor expected of appellate counsel would require some qualification of the bald statement in the brief.

nesses established the theft of the Motorola stereo and five items of children's clothing from Dora's Thrift Shop, all of which were seized in the execution of the second search warrant. The thefts occurred April 6, 1968.

As indicated above, Anderson testified denying that he lived at 404 N. Madiera Street although admitting daily visits. The landlord testified the property was rented to Geraldine Hopkins. However, police officers testified that they had observed Anderson during the surveillance period at least fifteen to twenty times, that they always saw Anderson there at night up to 2:00 A.M., that on two or three occasions they observed him the next morning, and that some of his clothing, which they had seen him wear, was found in one of the bedrooms in the house.

## I

Appellant contends the first search warrant failed to disclose probable cause for its issuance, and, therefore, the second warrant was also invalid because it was based upon observations obtained in illegal execution of the first warrant. Copies of neither of the warrants are included in the record and appellant's counsel had made no motion to supply their omission pursuant to Rule 1027. We, therefore, decline to consider the question. We also decline to exercise our powers under Rule 1027 to order the omission corrected since the testimony as to guilt or innocence discloses ample probable cause for the officers to procure the first warrant.[2]

## II

Anderson contends the court committed error in admitting the copy of the warrant. The general rule that the contents of a document, established to be lost, can be

---

2. The Clerk of the Criminal Court of Baltimore certified the record to this Court on October 15, 1969. He certified that the police department of Baltimore City had removed the copies of the warrants from the court records. A copy of this certification was mailed to both the Attorney General and counsel for appellant. The Clerk of the Court of Special Appeals obtained from the police department of Baltimore City what purported to be copies of the missing warrant, but we decline to review them since they have not been certified as a part of the record.

furnished by secondary evidence, 4 Wigmore, *Evidence,* § 1194, has been applied in Maryland in several cases: *Barranco v. Kostens,* 189 Md. 94, 54 A. 2d 326, *Wright v. Rever,* 151 Md. 558, 136 A. 61, *Robinson v. Singerly Pulp & Paper Co.,* 110 Md. 382, 72 A. 828. These authorities make clear that whether or not the loss has been sufficiently established to warrant the admissibility of the secondary evidence is largely in the discretion of the trial court; we see no abuse of discretion from the testimony and stipulation set out above concerning the loss of the two search warrants.

2 Wharton, *Criminal Evidence,* § 593 indicates that it must be shown that the documents are lost or destroyed without the fault of the party tendering proof of the same. In *Duggins v. State,* 7 Md. App. 486, 256 A. 2d 354, this Court held that an original warrant must be produced to establish the validity of arrest where its existence or contents is challenged, but we pointed out the exception where the warrant was unavailable for some reason other than the fault of the prosecution. Of course, in one sense any document in possession of state officials cannot be lost without at least some minor fault by some official or employee of the State; but we think the rule is more fully stated in 1 Jones, *Evidence,* § 238: "If the loss or destruction of the instrument is shown to have been intentional, and for the purpose of making it unavailable at the trial secondary evidence would be inadmissible" citing 4 Wigmore, *Evidence,* § 1198 (3d Edition) which gives a full discussion of the problem. It seems apparent in the instant case the original was not intentionally lost or destroyed so that a carbon copy was properly admitted.

Anderson contends the admission of the copy of the warrant was improper unless Judge Baer were called to attest the validity. He supports his proposition by citing § 1 of Art. 4 of the Constitution of the United States and 28 U.S.C. 1738 relating to the methods by which official documents must be authenticated to receive full faith and credit under the federal Constitution between one state and another. We are unable to see any connection between

his citations and the problem before us, and he cites no case to support his argument.

In discussing contentions I and II, the State claimed that since the appellant denied any possessory interest in the dwelling or its contents he could not object to the search and seizure, citing a line of cases including *Stewart v. State*, 1 Md. App. 309, 229 A. 2d 727, and *Scott v. State*, 3 Md. App. 429, 239 A. 2d 771 wherein the seizure was from persons other than the person charged with the crime. The State overlooks completely *Kleinbart v. State*, 2 Md. App. 183, 234 A. 2d 288 in which we cite *Jones v. United States*, 362 U. S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697 holding that a person is not required to admit the possession in order to have standing to question a search when he was being prosecuted for the possession of the articles in question. In the instant case it was alleged that Anderson was in possession of the premises at 404 N. Madiera Street from which he conducted sales of narcotics and that he was either the burglar, thief or receiver of the stolen goods on the premises. It would seem that Anderson's standing to object to the search was established by *Jones v. United States, supra*.

### III

Anderson contends the evidence was insufficient to show that he maintained 404 N. Madiera Street for the purpose of selling narcotics. His admitted relationship with the legal tenant of the property, the observation of his activities over a period of a month by police officers and the testimony of Mr. Xikouloutakis leave no reasonable doubt he was in possession of the property for the purpose of selling narcotics as well as for the purposes he claimed.

### IV

Anderson contends the evidence was insufficient to support the two convictions for receiving stolen merchandise. The evidence showed that he was in jail on April 6, 1968 and the court took judicial notice of the rioting and looting in Baltimore City at that time. His dominion

over the furniture was shown by his helping to move it and by his constant presence at the house. His conviction was proper under the rule that one in exclusive possession of recently stolen goods, in the absence of reasonable explanation can be found to be the burglar, the thief, or if others are shown to be involved, the receiver. See *Jordan v. State,* 219 Md. 36, 148 A. 2d 292. The joint possession of the merchandise, recently stolen, was sufficient in itself to establish all elements of receiving stolen goods except, of course, the theft, particularly in view of the fact that although the appellant testified he made no attempt whatever to explain the presence of the stolen items. Anderson's incarceration at the time of the theft was sufficient to show others were involved.

## V

Finally, Anderson contends his conviction for the sale of narcotics on August 30, 1968, precluded, by reason of double jeopardy, his conviction for maintaining a dwelling for the sale of narcotics in April, 1968. Aside from the fact that we are unable to comprehend the logic of the contention, no such contention was presented to the trial court and under Maryland Rule 1085, it will not be considered here.

*Judgments affirmed.*