The Mayor and City Council of Baltimore *vs.*
William H. War.

*Master and   Servant—Incompetent employé—Negligence of
Master—Evidence.*

In an action against the City of Baltimore by a laborer in a sewer
    to recover damages for personal injuries alleged to have been
    caused through the negligence of the defendant in employing an
    incompetent engineer who had charge of the engine which
    hoisted and lowered the cage or elevator in the shaft by which
    the plaintiff and other workmen were conveyed to and from their
    work in the sewer, it was shown that in lowering the cage the
    day before the injury happened, the engineer let it fall two or
    three times.   Held :

That although the cage fell by reason of the negligence of the
    engineer the day before the accident, this was no proof that he
    was incompetent, nor that the defendant had been negligent in
    selecting him for the position to which he had been assigned.

It was shown in evidence that the city commissioner, an officer
    of the city who had charge of the construction of the sewer,
    selected the engineer who operated the hoisting machine, on the
    recommendation of two citizens, one a member of the City
    Council, and a locomotive engineer of ten years' experience,
    after he had picked out another man for the place.   Held:

That negligence could not be ascribed to the officer in selecting the
    engineer, in the absence of evidence to show that a prudent man
    would not have regarded the recommendation.

Evidence, giving, not the contents, or even the substance of a
    letter, but merely the impression which its perusal left on the
    witness' mind, is inadmissible.

In the absence of evidence showing that before the accident hap-
    pened the city commissioner had any knowledge or information
    that the engineer had been careless the day prior to the injury of
    the plaintiff, there is no evidence of negligence on the part of
    the defendant in retaining him thereafter.

38                    v. 77.

Mayor, &c., of Baltimore *vs.* War.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court. The prayers of the defendant referred to in the opinion of the Court and which it was held ought to have been granted, are as follows:

1. That there is no legally sufficient evidence of negligence on the part of the defendant's agents in the employment of engineer Burns, and the verdict must be for defendant.

2. That there is no legally sufficient evidence of negligence in retaining engineer Burns in the employ of the city, and the verdict must be for the defendant.

3. That there is no legally sufficient evidence that engineer Burns was not a competent and proper person to employ to run the engine at the Cross street sewer, and the verdict must be for the defendant.

The cause was argued before ROBINSON, BRYAN, FOWLER, ROBERTS, and McSHERRY, J.

*William S. Bryan, Jr., City Solicitor,* and *Thomas G. Hayes, City Counsellor,* for the appellant.

*Fetter S. Hoblitzell,* for the appellee.

McSHERRY, J., delivered the opinion of the Court.

This action was brought to recover damages for personal injuries. The declaration contains three counts. The first has been abandoned, and need not therefore be alluded to. The second alleges, in substance, that the defendant, a municipal corporation, was engaged in constructing a sewer under the bed of Cross street in the City of Baltimore; that the plaintiff was employed as a laborer thereon; that in the prosecution of this work a shaft was sunk through which a cage or elevator used for conveying the plaintiff and others to and from their

work in the sewer, and for other purposes, was raised and lowered by means of a steam engine; that the defendant was bound to furnish a safe, competent, and skilful, engineer to operate the engine, but that notwithstanding this duty the defendant did not employ a safe, competent, and skilful engineer, whereby the plaintiff whilst rightfully upon the elevator, to be conveyed down the shaft to his work, and whilst exercising due care himself was, by the negligence of the defendant, its agent and servants, precipitated down the shaft and seriously injured for life.    The third count alleges that the defendant was bound to use care in the selection and in the retention in the service of a competent and trustworthy engineer to operate the engine used in hoisting and lowering the cage or elevator, but that the defendant was negligent in the selection and retention in its service of Thomas Burns the engineer who had control of the engine, and that by reason of the incompetency or negligence of Burns and the negligence of the city in selecting and retaining him, the plaintiff was injured in the manner and to the extent described in the second count.    The defendant pleaded not guilty, and the trial resulted in a verdict against the city, upon which judgment was entered, and from that judgment this appeal has been taken.

The *gravamen* of the second count is that the city was negligent in not employing a competent engineer to operate the elevator, and that the engineer himself was negligent; and of the third count that the city was negligent in selecting and in retaining in its service an incompetent engineer, and that the engineer was guilty of negligence whereby the accident happened.    If the city was guilty of negligence as imputed to it in the third count, it must have been negligence either in the original employment of Burns, or in continuing him in its employ after discovering his incompetency, if he really was

incompetent, or in continuing him in its employ after having had sufficient time to discover his incompetency, and carelessly failing to do so.

It appears from the plaintiff's evidence that ordinance No. 43 of 1889, made provision for the construction of the Cross street sewer, and that the management and control of the entire work was placed in the hands of the City Commissioner. He was entrusted with the power to employ laborers, mechanics and all other servants needed in the prosecution of the work, and had charge of and supervision over the whole improvement. He acted for the city and stood towards the employés under him in the relation of deputy master or vice-principal. It is equally certain that Burns, the engineer, by whose alleged negligence the accident happened, and War, the plaintiff, were fellow-servants of the same master. It is true the one had charge of the engine which hoisted and lowered the cage in the shaft, and the other worked in the excavation below the surface; but they both served the same master, worked under the same control, derived authority and compensation from the same source, and were engaged in the same general business; though in different grades or departments of it; and each took the risk of the other's negligence. *Wonder vs. Balto. & Ohio Railroad Co.*, 32 *Md.*, 420; *State, use of Hamelin, et al. vs. Malster & Reaney*, 57 *Md.*, 287; *Baltimore Elevator Company vs. Neal*, 65 *Md.*, 438; *Yates vs. McCullough Iron Co.*, 69 *Md.*, 370.

The master does not guarantee his servant against the negligence of a fellow-servant. One of the risks which the servant takes upon himself on entering or remaining in the master's employment, is the danger of injuries to himself from the negligence of co-employés. For these injuries the master is not responsible unless he himself has been guilty of negligence in the selection of the servant whose carelessness caused

the accident; or unless knowing his incompetency or having sufficient opportunity to know it and failing to discover it, he has retained the negligent employé in his service. This principle is not only not disputed, but the declaration is framed upon a distinct recognition of it.

To maintain this action it is consequently necessary for the plaintiff to prove not only the fact of the injury, but also, first, that the accident was the direct result of a co-employé's negligence, and, secondly, either that the master had not used proper care to select a competent co-employé, or, that subsequently to the employment and prior to the accident the defendant discovered the incompetency of Burns, or could have discovered it by the exercise of reasonable care, but still retained the incompetent servant. The burden of proof was on the plaintiff to establish these propositions by legally sufficient evidence, and unless the evidence adduced by him was of sufficient probative force to enable an ordinarily intelligent mind to draw a rational conclusion therefrom in support of the proposition sought to be maintained thereby, it was the clear duty of the Court to exclude it from the consideration of the jury. *Baltimore Elevator Co. vs. Neal, supra.* Several of the prayers presented in behalf of the city, but rejected by the Court below, challenged the legal sufficiency of the evidence, and now raise in this Court the ultimate or fundamental question of the right of the plaintiff to recover at all.

Turning to the evidence offered by the plaintiff, and assuming for the purposes of this discussion that the objections to its admissibility are not tenable, there are two circumstances, and only two, relied on to show the imputed incompetency of Burns and the lack of care on the part of the City Commissioner in selecting him to operate the engine. It appears that the shaft where the

accident happened was forty-five or fifty feet deep, and that the cage or elevator was hoisted from the bottom by means of a cable which was coiled upon a drum as the latter revolved when the power of the engine was applied. This drum was provided with a brake which by friction retarded the revolution of the drum as the cage descended, and enabled the engineer to lower the elevator gradually. By not throwing the engine out of gear the pressure of the steam further retarded the descent of the elevator. The engine had been erected but a few days before the accident, and Burns was placed in charge of it the day immediately preceding the occurrence. In lowering the cage the day before the injury happened he let it fall two or three times, but why he did this or for how great a distance it fell does not satisfactorily appear. This is one of the two circumstances adduced to prove Burns incompetent. There are some speculations and some vague conjectures as to what caused the cage to fall as just stated, but they are far short of legal proof. Conceding, however, that it fell by reason of negligence on the part of Burns the day before the accident, this was no proof that he was incompetent nor that the City Commissioner had been negligent in selecting Burns for the position to which the latter had been assigned. Negligence and incompetency are not convertible terms, for the most competent may sometimes be negligent, and evidence of acts of former unskillfulness furnishes no legitimate ground of presumption either that Burns was negligent when the plaintiff was injured, or unless communicated to or known by Smyrk, the City Commissioner, before the accident to the plaintiff happened, that Smyrk was derelict in retaining Burns in the city service. There is no testimony in the record to the effect that Burns was incompetent. Beever, one of the plaintiff's witnesses, testified that he had told Mr. Thomas, who was

superintending the work, that Burns was incompetent to run an engine, and that he told Thomas this when the cage fell the day before the injury, but he nowhere testified *as a fact* upon the trial to that alleged incompetency.

The day before the plaintiff was hurt the cage fell either because Burns was negligent, or because he was incompetent, or by reason of some accident referable neither to negligence nor incompetency on his part. No other cause can possibly be assigned. The burden of proof is on the plaintiff to show that Burns was incompetent. The occurrence itself in cases of this character raises no presumption of negligence and justifies no inference of incompetency. If you say the cage fell the day before the accident, because Burns was then negligent, you do not thereby prove him incompetent, because negligence may be predicable of competency. If you say the cage fell because of some accident, you do not prove Burns negligent, because an accident may happen to the most prudent. If you say the cage fell because Burns was incompetent, you assume the very proposition to be proved as the foundation of the plaintiff's case, though there is no evidence to warrant that assumption.

Against the objection of the defendant the plaintiff was allowed to prove the following facts for the purpose of showing that sufficient care had not been used by the defendant or its agents in the selection of the engineer Burns—the second circumstance relied on by the plaintiff: That in January, 1891, Walter A. Cox was a member of the City Council, and Cox testified in these words: "It was between the 15th and 18th of January, that I was at the City Hall. It was about ten o'clock in the morning, and Mr. Burns came to me in company with Mr. John Murphy, who was then and is now, doorkeeper in the City Council. Mr. Murphy remarked to me: 'Mr. Cox, this is Mr. Burns.' He has a letter

here to Captain Smyrk from Mr. Rasin, and at the same time handing me the letter. It was an open letter. He said you read it, and then I want you to go into Captain Smyrk with him. I opened the letter and read it. I can't remember the contents of the letter all the way through. It was written on a small sheet of note paper and was to the effect: It was addressed to Captain Smyrk, City Commissioner, with orders—I say orders—it was positive orders that he should put Burns to work on the Cross street sewer, and that I would accompany Burns to him; my name was used, and the capacity in which I then acted. I read the letter and I remarked to Burns, 'Are you an engineer?' 'Yes, sir.' I said, where did you learn the business? He said, I fired on a tug boat in the harbor. I ran a tug boat in the harbor. I asked him if he had a license. He said he had not. I remarked to him it was very strange he did not have a license, and he came under that head. But, however, said I, I will go in to see the Captain with you, and we walked deliberately, the three of us, into Captain Smyrk's office. He was engaged at the time with a gentleman. I waited until he got through with his business, when I told him I wanted to see him a minute. He immediately turned his attention to me. I handed him the letter and remarked to him, Captain here is a letter to you that I have from Mr. Rasin, and I want you to put this man at work at one of the shafts in Cross street sewer. He is from my ward. He opened the letter and remarked, 'that breaks up my calculations. I had picked out another man for that place.' I remarked that it didn't make any difference to me who you have picked out; I want you to put this man there. He said, all right, I will do it. This is all I know about Burns and the work. The letter was signed I. Freeman Rasin. It was an order to put him at work on one of the shafts. * * * * * I, myself, have been a loco-

motive engineer for ten years.   Have had no experience
with this class of engines, nor with marine engines.   I
recommended Burns for the place through that letter.
I knew nothing myself of Burns' fitness for the place
when I recommended him for it, except what he told me
himself.   I went to Captain Smyrk and asked for his
appointment through the letter he had from Mr. Rasin,
but I questioned him as to his capacity as an engineer,
and he told me he was an engineer, and had run an
engine in Baltimore harbor.   It was my version that a
man couldn't run a boat without being a fairly compe-
tent engineer.   From his own say-so I thought possibly
Burns was fit for the work.   I had no authority to know
otherwise.   I do not want to be understood as stating
that I recommended a man who was unfit for the place."
Later on he was asked "Was it a letter which said:
Take notice.   You are hereby commanded to do so and
so; or was it a letter that said:   Dear sir, please put
this man on shaft No. 2?"   He replied:   "Oh, no, it
was addressed to Mr. Smyrk, written as I stated in my
evidence-in-chief, on note paper.   I didn't say that it
was a peremptory, positive order, such as Mr. Bryan
wants to make it out, but it was to the effect that he
should put Burns at work as engineer at one of these
shafts at Cross street sewer, and I would accompany
Mr. Burns.   That was about the purport of it."   "Was
it something like this:   Please put Mr. Burns to work
at one of the shafts at Cross street sewer.   He will be
accompanied and introduced to you by Mr. Cox?"
"Yes, sir; something like that."

We have thus quoted at length from the record be-
cause this is absolutely all the evidence adduced by the
plaintiff on this branch of the case.   Without reference
to the fact, which was alone for the jury to consider, that
every essential part of this statement made by the wit-
ness Cox was flatly and overwhelmingly contradicted,

was this evidence, assuming it to be admissible, legally sufficient to justify the Court in submitting the case to the jury? Reduced to its last analysis, the evidence relied on amounts simply to this: Captain Smyrk had "picked out" an engineer for shaft No. 2, but upon the recommendation of Mr. Rasin and City Councilman Cox, he appointed Burns. Acting upon the recommendation of Mr. Rasin is of itself obviously no evidence of negligence. There is nothing in the record—and we have no right to look beyond its pages—as there was nothing before the jury, to show that a recommendation by that gentleman is indicative of unfitness on the part of the person recommended; nor is there any thing before us from which it can be conjectured, much less legally inferred, that a public official who relied upon such a recommendation in selecting an employé acted imprudently, carelessly or negligently. If the City Commissioner, in consequence of that recommendation, abandoned his intention to employ some other engineer for shaft No. 2, and appointed Burns instead, there is nothing to suggest that Mr. Rasin's endorsement was not entitled to be considered as a reliable certification of the qualifications of Burns. And as there was no evidence of this, neither Court nor jury would be justified in assuming it. But besides this, Cox, himself a locomotive engineer of ten years experience, requested the employment of Burns. He was careful to say that he did not wish it to be understood that he had recommended a man who was unfit for the place, and whilst he knew nothing of the capacity of Burns, apart from what Burns had told him, he learned that Burns was an engineer and had been running a boat in the harbor of Baltimore, and he thereupon naturally concluded that a man could not run a boat without being a fairly competent engineer. Now, if the City Commissioner acted in the selection of Burns upon the letter of Mr. Rasin and

upon the request of Mr. Cox, did he thereby act negligently? Before that question can be answered in the affirmative it is necessary to show by evidence—and the record is utterly devoid of any such evidence—that a prudent man would not have regarded the suggestion of Mr. Rasin or the request of Mr. Cox, though the latter was an officer of the city—a member of the City Council—charged with the duty of faithfully serving and protecting its interests.

But the evidence of Cox as to the contents of the letter alleged to have been written by Mr. Rasin was wholly inadmissible, and should have been excluded, because the witness did not profess to be able to give the contents, but merely characterized or described them as an order to put Burns to work, and by that means his interpretation of the contents of the letter was suffered to go to the jury as proof of the actual contents. It is a perfectly familiar rule that parol evidence of the contents of a written paper cannot be given unless it is first satisfactorily shown that the paper has been lost or destroyed, or, if it be in the possession of the adverse party, that proper and seasonable notice has been given to him to produce it. *Young vs. Mertens*, 27 *Md.*, 114; *Beall & McCullough vs. Poole & Hunt*, 27 *Md.*, 645.

Though the plaintiff offered not a particle of evidence that the letter had been lost or destroyed, he traced it by the testimony of Cox into the possession of Smyrk, and exhibited a notice which had been served upon the City Solicitor, requiring the defendant to produce the letter at the trial. Notice to a party to the cause will be sufficient if the lost instrument be traced to his possession or to the possession of one in privity with him, such as his banker, agent, or servant, or the like. Upon its non-production after such a notice parol evidence of its contents may be given. *Baldney vs. Ritchie*, 1 *Stark. R.*,

338; *Sinclair vs. Stevenson,* 1 *Carr. & P.,* 582; *Burton vs. Payne,* 2 *Carr. & P.,* 520; *Taplin vs. Atty.,* 3 *Bing.,* 164. A sufficient foundation having been laid to admit parol testimony of the contents of the letter, the witness proceeded to give, not the *contents* or even the *substance,* but the *effect* of the letter,—the result of the impression which a perusal of the letter left upon his mind. This was substituting his interpretation of the meaning of the letter for the contents of the letter. It was giving what the witness understood the letter to signify, and not what was written in it. Instead of deposing to the contents,—not with verbal exactitude, for that was unnecessary,—he summarized the letter, and his description of what, according to his conception, it imported, was suffered to go to the jury.

There is not the slightest evidence in the record to show that before the accident happened the City Commissioner had the faintest knowledge or information that Burns had been careless the day prior to the injury of the plaintiff. The knowledge of other employés could not bind the master.

From the views we have expressed it is obvious, there was no legally sufficient evidence to go to the jury to show, either, that Burns was incompetent, or that Smyrk had been negligent in employing or retaining him in the service of the city. There was not even a *scintilla* of evidence to support these essential features of the plaintiff's case. "A *scintilla* of evidence, or a mere surmise that there may have been negligence on the part of the defendant, clearly would not justify the Judge in leaving the case to the jury; there must be evidence upon which they might reasonably and properly conclude that there was negligence." *Toomey vs. The London, Brighton and South Coast R. W. Co.,* 3 *C. B.,* (*N. S.*), 146; *State, use of Foy, et al. vs. Phil., Wilm. and Balto. R. R. Co.,* 47 *Md.,* 76.

For the reasons we have given we are of opinion that the first, second, and third prayers presented by the defendant ought to have been granted. They withdrew the case from the jury. For the error in rejecting them the judgment must be reversed, and as upon the plaintiff's own case he is not entitled to recover, a new trial will not be awarded.

> *Judgment reversed, with costs in this Court and in the Court below.*

