CHARLES BARRANCO *v.* HERBERT W. KOSTENS

[No. 164, October Term, 1946.]

*Decided July 8, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*William Taft Feldman,* with whom was *I. Duke Avnet* on the brief, for the appellant.

*Archey C. New* and *John H. Hessey,* with whom was *John H. Herold* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This suit for specific performance and injunction was entered by Herbert W. Kostens, proprietor of a hardware store at 4708 Eastern Avenue in Baltimore, to compel the owner of the property, Charles Barranco, to convey it to him in accordance with an alleged option agreement. Barranco and his wife, Sarah Barranco, now deceased, leased the property to complainant for five years from December 1, 1935, to November 30, 1940, for $70 per month, with an option to purchase the property, subject to an annual ground rent of $45, at any time within three years for $10,000. Complainant did not exercise that option. But he alleged that Barranco executed another lease for five years from March 1, 1941, to February 28, 1946, at $65 per month, with an option to purchase the property, subject to an annual ground rent of $45, at any time during the lease for $8,000; that he exercised this option; but that his copy of the lease has been lost. On December 20, 1945, the chancellor enjoined defendant from transferring the property pending the determination of the case; and on January 23, 1947, he passed a decree ordering defendant to execute and deliver a deed to complainant conveying the property, subject to an annual ground rent of $45, upon payment of $8,000 by complainant. The appeal is from that decree.

It has been broadly stated that the extraordinary remedy of specific performance is not a matter of right in either party, but is a matter of discretion in the court. This discretion, however, is not an arbitrary or capricious discretion, but a sound and reasonable discretion, which is governed as far as possible by established principles of equity, and which grants or withholds relief according to the circumstances of each particular case when the established principles do not furnish any exact measure of justice between the parties. If a contract for the sale of real estate is in writing, and is clear, definite, mutual, and equitable, the chancellor must grant the complainant's application if it is within the law. He may refuse relief only when the facts are doubtful, or when some of the terms of the contract are so vague or uncertain that injustice might arise. *Duvall v. Myers,* 2 Md. Ch. 401, 404; *Popplein v. Foley,* 61 Md. 381, 385; *Soehnlein v. Pumphrey,* 183 Md. 334, 340, 37 A. 2d 843; 2 *Story, Equity Jurisprudence,* 14th Ed., secs. 1026, 1027. On the other hand, the chancellor cannot grant specific performance unless the evidence is so clear, definite and convincing as to leave no reasonable doubt as to the existence of the contract and its terms. *Semmes v. Worthington,* 38 Md. 298, 318; *Shriver v. Seiss,* 49 Md. 384, 388; *Penn v. McCullough,* 76 Md. 229, 24 A. 424; *Bellevue Club v. Punte,* 148 Md. 589, 598, 129 A. 900; *Trotter v. Lewis,* 185 Md. 528, 45 A. 2d 329; *Nickerson v. Nickerson,* 127 U. S. 668, 8 S. Ct. 1355, 1358, 32 L. Ed. 314.

It is an established rule of evidence that, when it has been shown that a written instrument has been lost or destroyed, parol evidence of its contents is admissible. *Mayor & City Council of Baltimore v. War,* 77 Md. 593, 603, 27 A. 85; *Burton v. Driggs,* 20 Wall. 125, 22 L. Ed. 299, 302. The question whether the search for a lost instrument has been sufficient to render secondary evidence of its contents admissible is addressed to the sound discretion of the court, and the determination of the question is not reviewable on appeal unless there has been a manifest abuse of discretion. It is not necessary

that the testimony of a witness who has read a lost instrument should be able to give its exact language, but it is sufficient if it proves its substance as far as it relates to the matter in controversy. *Robinson v. Singerly Pulp & Paper Co.*, 110 Md. 382, 72 A. 828. However, it is not enough that a witness is able to state his understanding of the legal effect of the instrument, if he cannot give the substance of the instrument. The evidence necessary to establish a lost instrument and to prove its contents must be clear and positive and of such a character as to leave no reasonable doubt as to its terms and conditions. *Tayloe v. Riggs*, 1 Pet. 591, 7 L. Ed. 275, 279; *Scurry v. City of Seattle*, 56 Wash. 1, 104 P. 1129, 134 Am. St. Rep. 1092. Moreover, where a contract is required by the Statute of Frauds to be in writing, the parol evidence necessary to establish the contract after it has been lost or destroyed must be especially explicit and convincing. *Welsh v. Veasley*, 286 Mo. 93, 227 S. W. 58. The strictness of the rule may be somewhat relaxed where the missing instrument has been withheld or destroyed by the person to be charged. *Tisdale v. Tisdale*, 2 Sneed, Tenn., 596, 64 Am. Dec. 775, 782. But in the case before us it is alleged that the lease was "unaccountably lost or mislaid," and therefore no reason appears for relaxation of the rule.

In our judgment there is reasonable doubt as to the existence of the alleged agreement. In the first place, the affidavits of Kostens and his wife, Marguerite S. Kostens, concerning the alleged execution of the lease were contradictory. In the original bill Kostens swore that they both signed, sealed, and acknowledged the lease before a notary public; in the amended bill Kostens swore that he was the only lessee. He testified that Barranco had the lease prepared in duplicate, and on the evening of March 1, 1941, brought the two copies to the hardware store. On direct examination Mrs. Kostens said: "Mr. Barranco and my husband and I, all three, were there when that was signed. We went behind our counter and signed it." On cross-examination

she said that she did not sign the lease either as lessee or witness.

It was shown that on October 8, 1945, complainant sent a registered letter to Barranco notifying him that he wished to purchase the property. It is also admitted that Barranco called at his home on Sunday morning, October 14, to discuss the subject. Complainant testified that he showed his copy of the lease to Barranco, and that Barranco read it. Then he added for emphasis: "And he saw what was in it. He saw that option giving me the right to purchase that property." When Barranco, who is now 58, took the stand, he swore that he is unable to read English. Born in Italy and coming as an immigrant to the United States without his parents at the age of 12, he immediately went to work, and never attended school in this country. During the past twenty years he has been employed in a machine shop of the Baltimore Transit Company. Barranco emphatically denied that complainant showed him any papers on the occasion of his visit. Complainant testified that Barranco stated that he did not want to sell the property, but on account of the option in the lease he "did not see that he could do anything about it." On the contrary, Barranco testified: "I absolutely said I did not want to sell my home to anybody. I had no idea of selling it because as long as I have a job, I don't need nothing. I don't want to sell it."

Complainant further testified that after he and Barranco had read the lease, he laid it on the table, and invited Barranco downstairs to see his club cellar. Barranco left the house shortly afterwards, and complainant testified that when he looked for the lease a moment later it was not on the table. He said that he and Mrs. Kostens made a thorough search for it, and their son and one of his schoolmates joined in the search, but they could not find it. He claimed that he went immediately to Barranco's home to report the disappearance of the lease, but that he was not at home. It is difficult to understand why he made no further effort to find

Barranco, or why he did not report the loss to his attorney, Archey C. New. The record shows that on October 17 the attorney wrote a letter to Barranco requesting him to comply with the option agreement. In that letter he asserted that he had an original copy of the lease containing an option agreement. When the case was heard, however, he admitted that he had no such copy in his file. His explanation to the Court of Appeals was that he was under the impression that he had a copy of the lease, and he wrote the letter without looking in his file.

Complainant relied heavily upon the testimony of Dr. Louis E. Pasco, a pharmacist and notary public, who testified that he took the acknowledgments to the lease in 1941, and that he saw the lease again on September 13, 1945, when complainant asked his advice about exercising the option. It is observed that, although the notary did not read the instrument when it was brought to him for notarization, and did not know what property it covered, yet when he saw it in 1945, he instantly recognized it as the lease he had notarized about five years before. Moreover, he swore that the lease was typewritten on two pages, with no corrections; whereas complainant swore that it contained only one page, and was typed on a printed form.

Karl M. Levy and J. Henry Ditto, members of the Baltimore Bar, testified that on September 13, 1945, complainant showed them a lease containing an option agreement. But neither of the attorneys could recall whether the lease had been acknowledged. More important still, neither of them knew Barranco's signature. Complainant also produced his brother, his father-in-law, and a friend, all of whom testified that he had a written lease with an option to buy the property in which he had his store. But none of these witnesses could say whether the lease had been signed by Barranco, inasmuch none of them knew his signature.

Against this uncertain and conflicting testimony, we have Barranco's categorical denial that he signed any lease other than that made in 1935. It appears from the

record that Barranco had always depended upon his wife for advice in business transactions. She was born in Italy, but she attended school in America, and she was industrious and thrifty. Out of their savings they purchased three properties, in one of which she operated a beauty shop. It was she who made the arrangements through the real estate dealers for the making of the lease in 1935. She died on September 1, 1940, three months before the expiration of the lease. It does not seem likely that, soon after her death, Barranco, who was unable to read, would take two copies of a fully prepared lease to the hardware store, and there, without the aid of any attorney or friend, sign the two copies of the lease. Nor does it seem plausible that, after the property had enhanced greatly in value during the years since 1935, and after incurring considerable expense for the installation of a new heating plant in the building, Barranco would give the lessee an option to buy the property at a price of $2,000 less than the price agreed upon in 1935. He admitted that he received complainant's letter in October, 1945, notifying him that he wanted to buy the property. But he said that he informed complainant that he had three children and had promised his wife to leave one property to each of them. He also said that complainant had agreed in the 1935 lease to pay $70 per month rent, but after several years he refused to pay more than $65, and since he had failed to comply with the promise made in the written lease, he saw no advantage in signing another, though he made no objection to complainant's holding over from month to month as long as he continued to pay $65. Without being required to decide which party is telling the truth, we can at least say that Barranco's story is plausible.

Furthermore, even assuming that a lease had been executed by Barranco, and that it contained the option agreement as alleged, nevertheless it could not be specifically enforced because of indefiniteness of the clause authorizing a ground rent lease on the property. The terms of an option to purchase, like any other agreement,

must be clear and definite and free from all ambiguity. In *Moran v. Hammersla,* 188 Md. 378, 52 A. 2d 727, we held that an option agreement providing that a ground rent of a certain amount per year, capitalized at what it should be fairly worth, was to be accepted by the vendors as part of the purchase price, was too indefinite to be specifically enforced in the absence of any stipulation as to the term for which the intended ground rent was to be made. In the present case the property was subject to a ground rent when the lease was made in 1935, but it was redeemed in 1939. Complainant was not aware in 1941 that the ground rent had been redeemed. He had no attorney at the time, and he did not "bother to inquire whether the property was in fee or not." When he was asked whether he knew that Barranco owned the ground, and that a new ground rent lease would have to be created, he replied: "I didn't know anything about that." It is obvious that no definite term for ground rent lease was agreed upon.

As the alleged agreement cannot be specifically enforced, because the evidence is too uncertain both as to the existence of the agreement and its terms, the decree of the chancellor must be reversed.

*Decree reversed and amended bill of complaint dismissed, with costs.*