**In re THE WALLACE & GALE CO., Debtor.**

**The Aetna Casualty and Surety Company, Plaintiff,**

v.

**The Wallace & Gale Co., et al., Defendants.**

Bankruptcy No. 85–A–0092.
Civ. No. PJM 94–2327.

United States District Court,
D. Maryland,
Southern Division.

Sept. 18, 2002.

Lee H. Ogburn, Armand J. Volta, Jr., Baltimore, MD, Jacob A. Stein, Washington, DC, Pamela Morgan Hodge, Cincinnati, OH, for plaintiff.

Christopher C. Tsien, Columbia, MD, Stanley J. Levy, New York City, Carl E. Tuerk, Jr., Wendy Ann Hartmann, George C. Davis, Kenneth F. Davies, Baltimore, MD, William J. Bowman, James W. Greene, John E. Heintz, Robert L. Hoegle, Washington, DC, Michael B. Mann, Towson, MD, for defendants.

*OPINION*

MESSITTE, District Judge.

I.

The Court considers the claim of the Intervenors that, between 1962 and 1965, Travelers Casualty Insurance Company issued certain comprehensive general liability (CGL) policies to Wallace & Gale, Inc.,[1]

---

1. The issuing insurer would actually have been Aetna Casualty and Surety Company,

Travelers' predecessor in interest. For the

the insulation contractor in bankruptcy whose insurance status is the subject of these proceedings.

In a previous Opinion, the Court granted summary judgment in favor of the Intervenors, establishing the existence and the terms and conditions of the policies in question. The Court concluded, that "(t)he evidence that CGL policies covering bodily injury claims were issued to Wallace & Gale between 1962 and 1965 is clear and positive and there is no evidence to the contrary." *In re Wallace & Gale*, 275 B.R. 223, 242 (D.Md.2002). The Court further ruled that "the scope of coverage under the policies in question is no less than the minimum policy limits for Aetna's CGL policies for the period in question," *Id.* at 244, those limits being $5,000 per person, $10,000 per accident or occurrence, and a $25,000 aggregate for products and completed operations claims. One issue was left open for resolution—that of the actual limits of the policies over and above the minimum.

On June 25, 2002, the Court, as the trier of fact, held a bench trial to address that remaining issue. The Court now concludes that the limits for bodily injury liability for the policies in question were the same as those limits for the policy Wallace & Gale purchased in 1966, *viz.* $500,000 per person, $1,000,000 per accident or occurrence, and a $1,000,000 aggregate for products and completed operations claims.[2]

## II.

Although it is beyond dispute that Travelers issued four policies to Wallace & Gale for the years 1962, 1963, 1964, and 1965, the declaration pages containing the limits of the policies have not been found. Travelers, however, has produced numerous documents, including retrospective rating documents, loss experience documents, and earned premium information relating to the four policies as well as the complete policy it issued to Wallace & Gale for 1966. From those documents, these facts emerge:

1) The 1966 Travelers policy, which had bodily injury limits of $500,000/ $1,000,000/$1,000,000, shows on its declaration page that it was a renewal of the 1965 policy, the last of the four policies for which the declarations page is missing. Both the 1965 and 1966 policies were written on the same ISO '55 standard form. The Court has already ruled as a matter of law, especially in the absence of any evidence to the contrary, that the 1965 and 1966 (hence the 1962, 1963 and 1964) policies contained the same terms and conditions.

2) Both Intervenors' expert, Leonard J. Silver, a risk and insurance management consultant, and Travelers' expert, Clinton N. Green (a long-time Aetna employee), testified that a renewal policy usually contains the same limits as the previous policy.

3) Both experts also testified that insureds ordinarily do not alter the limits of insurance from year to year and rarely make significant increases in those limits from year to year. A ten-fold increase in the amount of limits from one year to the next would be significant. An increase in limits of 100–fold in one year would be extraordinary. Both experts thus agreed that it is unlikely that Wallace & Gale would have had minimum lim-

sake of convenience, the Court will refer to Travelers in lieu of Aetna.

**2.** The parties agree that for non-products and operations claims the policies contained no aggregate limits.

its of $5,000/$10,000/$25,000 in 1965 and limits of $500,000/$1,000,000/$1,000,000 in 1966.[3]

4) Travelers grouped the insurance policies purchased by Wallace & Gale into three-year periods for purposes of retrospectively rating the premiums.[4] Travelers treated Wallace & Gale's 1962, 1963, and 1964 policies as one group for this purpose and its 1965, 1966, and 1967 policies as a second group. All six of these policies were rated under the same retrospective premium plan, "Plan D," and all were subject to the same $10,000 loss limit per line of insurance.[5]

5) According to the expert, it would be quite unusual to group a policy with minimum limits of $5,000/$10,000/$25,000 in a retrospective Plan D three-year rating plan with other policies, such as the 1966 and 1967 policies, which had limits of $500,000/$1,000,000/$1,000,000.

6) The initial premiums for bodily injury liability coverage paid by Wallace & Gale for coverage for the 1962 through 1966 policies were consistent from year to year. Travelers' documents show that in 1962 the initial premium was $705, in 1963 it was $779, in 1964 it was $783, and in 1966 it was $846.

7) All policies issued to Wallace & Gale between 1962 and 1973 were combined in Travelers' internal documents for the purpose of analyzing loss experience and determining earned premium analysis credits. The retrospective premiums for these policies, which were based on sales and payroll, remained relatively consistent over these years, given the fluctuations in Wallace & Gale's sales over these years.

8) Both Travelers' expert and Intervenors' expert agreed that the retrospective premium "Plan D" policies between 1962 through 1967 contained limits greater than minimum limits.

Travelers' expert testified that he had never encountered an insured which maintained the same limits of insurance for as many as 10 years. He further testified that, as of 1962, CGL limits of $500,000/$1,000,000/$1,000,000 were "rare" for contractors of Wallace & Gale's size, that they were typically purchased only by Fortune 500 manufacturers and national contractors. Only in the middle to late 1960s through the 1970s, he said, did contractors and other insureds start to buy higher limits. Even then, limits would ordinarily only have been increased on account of (a) a major loss sustained by the insured or by someone else in their industry; (b) the advice of a broker or a consultant; or (c) a principal on a new job which required its contractors to carry limits at a certain level. By this, Travelers apparently in-

---

**3.** Indeed Travelers, for reasons that are not entirely clear, contends that the actual limits for bodily injury for the lost policies were $50,000/$100,000/$100,000.

**4.** Under a retrospective premium rating plan, the initial premium for a policy is merely an estimate. After the policy expires, the claims incurred during the policy period are adjusted and finalized. If the claims are determined to be higher than those upon which the initial premium was estimated, the insured is charged an additional premium. The retro-

spective rating may be undertaken with regard to multiple policies over a period of years, *e.g.* over 3 years.

**5.** The insured may purchase a loss limit for purposes of the retrospective premium calculation, *i.e.* a commitment from the insurer that any retrospective calculation of the premium will not be calculated against actual losses in excess of the loss limit. Wallace & Gale purchased a $10,000 loss limit for the retrospective premium policies in issue here.

tends to suggest that Wallace & Gale had low limits between 1962 and 1965, but thereafter, because of intervening events, it radically raised them. This argument, however, apart from its speculative premises, is refuted by the facts:

Contrary to what Travelers suggests, the evidence shows that:

1) Wallace & Gale had a very good loss experience under the policies issued by it from 1962 through 1980 and in fact earned returns of premium based on that loss experience. (At the same time the policies were profitable for Travelers, losses being only 1/3 of the premiums collected). There is no evidence that others in Wallace & Gale's industry suffered significant losses between 1962 and 1980 such that Wallace & Gale might have elected to dramatically increase its limits.

2) No evidence suggests that Wallace & Gale was advised by a broker or consultant to increase its limits.

3) No evidence suggests that Wallace & Gale acquired a new customer or customers in 1965 or 1966 that requested that it increase its limits.

4) In fact, while Wallace & Gale's financial reports show that its sales fluctuated significantly over the 18 years Travelers issued policies to it, Wallace & Gale never acted to increase or decrease its limits.

5) Finally, although Travelers' expert testified that he had never heard of a company having the same limits for even 10 years, the undisputed evidence is that Wallace & Gale in fact had exactly the same limits for 14 years.

### III.

Under Maryland law, the proponent of lost insurance policies has the burden of establishing the fact of loss and the terms and conditions of the policies by "clear and positive" evidence. *Barranco v. Kostens,* 189 Md. 94, 54 A.2d 326, 328 (1947). Although it is not entirely clear that these words are the equivalent of "clear and convincing" evidence, the Court accepts for present purposes that "clear and positive" evidence means the same as "clear and convincing" evidence. *See Krouse v. Krouse,* 94 Md.App. 369, 617 A.2d 1098, 1103 (1993). Similarly, while the proposition is not free from doubt, the Court accepts for present purposes that the burden of proving the limits of a lost policy, as well as the fact of its existence and its terms and conditions, is upon the insured. *See City of Tacoma v. Great American Ins. Co.,* 897 F.Supp. 486, 487–88 (W.D.Wash.1995); *but see Emons Indus., Inc. v. Liberty Mut. Fire Ins. Co.,* 545 F.Supp. 185, 189 (S.D.N.Y.1982) (noting that "limitations on liability . . . may arguably be considered . . . an exclusion"); *Warfield–Dorsey Co., Inc. v. Travelers Cas. and Surety Co.,* 66 F.Supp.2d 681, 689 (D.Md.1999) ("Under Maryland law, the burden rests on an insurer to establish the applicability of a particular exclusion from coverage.").

That said, the Court has no trouble concluding that the Intervenors have established by clear and positive evidence that the limits of the policies Travelers issued to Wallace & Gale for each of the years 1962 through 1965 inclusive were $500,000 per person, $1,000,000 per occurrence and a $1,000,000 aggregate for products/completed operations claims. Those were the limits for fourteen policies Travelers issued to Wallace & Gale between 1966 and 1980. The 1966 "renewed" the 1965 policy. The 1965 policy was grouped with the 1966 and 1967 policies for purposes of audit and for calculation of retrospective premiums, a grouping that would be highly unlikely if

the policies in fact had radically disparate limits. Similarly, the initial premiums for the 1962–66 policies remained at substantially the same level. Finally, Travelers own expert concedes that the limits of policies in question were unquestionably higher than the minimum limits.

Against this, Travelers continues to offer little more than gossamer speculation. That contractors of Wallace & Gale's size might not have ordinarily purchased coverage of the amounts proposed here is unconvincing. Nothing undercuts Travelers' arguments so much as the fact that its own expert testified that he had never encountered a company that maintained the same policy limits for as much as 10 years, despite the undisputed fact that in this case Wallace & Gale did so for at least fourteen. The Court finds that the Intervenors have carried their burden of proof by clear and positive evidence.

The Court will GRANT the Intervenors declaratory relief establishing the limits for its 1962 through 1965 policies as set forth herein.

A separate Order will be entered.

### ORDER

The matter of certain lost insurance policies issued to Wallace & Gale Company having come on for a bench trial before the undersigned, it is this 18 day of September, 2002

ADJUDGED, ORDERED and DECREED:

1) Defendants Travelers Casualty and Surety Company or its predecessor in interest issued comprehensive general liability insurance policies to Wallace & Gale, Inc. for each of the years 1962, 1963, 1964 and 1965 with terms and conditions identical to the policy issued by it to Wallace & Gale for the year 1966, including coverage in each

policy for bodily injury liability in the amount of $500,000 per person, $1,000,000 per accident or occurrence, and a $1,000,000 aggregate for products/completed operations claims.